# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

**TERRIA DIONNE**,

   *Plaintiff*,

v.

**FACTUAL DATA LLC A/K/A FD HOLDINGS LLC**,

   *Defendant*.

Case Number: 2:15-cv-00650-UA-MRM

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, TERRIA DIONNE, ("**Ms. Dionne**"), by and through her attorneys, Seraph Legal, P.A., files this Amended Complaint, pursuant Fed. R. Civ. P. 15(a)(1)(A), and complains of the Defendant, **FACTUAL DATA LLC A/K/A FD HOLDINGS LLC** ("**Factual**"), and states as follows:

## PRELIMINARY STATEMENT

1. This is an action brought by Ms. Dionne against Factual for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et. seq.* ("**FCRA**").

## JURISDICTION

2. Jurisdiction arises under the FCRA, 15 U.S.C. § 1681p.

3. Factual is subject to the provisions of the FCRA and is subject to the jurisdiction of this Court pursuant to 28 U.S.C § 1331.

4. Venue is proper in this District because the events giving rise to this cause of action occurred within the District. 28 U.S.C. §1391(b)(2).

## PARTIES

5. Ms. Dionne is a natural person residing in Charlotte County, Florida and is a consumer as defined by 15 U.S.C. § 1681a(c). She was previously known as Terria McEwen and Terria Spann.

6. Factual is an Ohio limited liability company with a primary business address of 250 East Broad Street, Columbus, OH 43215.

7. Factual is registered to conduct business in the State of Florida as a Foreign Limited Liability Company.

8. Factual's Florida Registered Agent is **Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301**.

9. Factual is a consumer reporting agency ("**CRA**") within the meaning of 15 U.S.C. §§ 1681a(f) and 1681a(u) because for monetary fees, dues, or on a cooperative nonprofit basis, Factual regularly engages in whole or in part in the practice of reselling consumer credit reports by assembling and merging information contained in the database of another CRA or multiple CRAs concerning any consumer for the purpose of furnishing consumer reports to third parties, and uses means or the facility of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail and telephone communications.

10. On information and belief, Factual does not maintain a database of the assembled or merged reports from which new consumer reports are produced.

## FACTUAL ALLEGATIONS

11. In or around May 2007, Ms. Dionne obtained a mortgage for $537,400 to purchase her primary residence ("**debt**").

12. In or around March 2012, Ms. Dionne filed Chapter 7 bankruptcy and as a result, Ms. Dionne's personal liability on the debt was discharged in 2012.

13. After discharge, around March 1, 2014, Shellpoint Mortgage Servicing ("**Shellpoint**") began servicing the debt.

14. Shellpoint stated that the debt was owned by Bank of New York Mellon, formerly known as The Bank of New York, as Trustee for the Certificate Holders of CWALT, Inc., Alternative Loan Trust 2007-20, Mortgage Pass-Through Certificates, Series 2007-20. **SEE PLAINTIFF'S EXHIBIT A.**

15. Shellpoint stated that while Ms. Dionne had no personal obligation to pay the debt, since it was discharged in 2012, Shellpoint was servicing the debt according to the original agreement to protect the creditor's rights in the associated property. *Id*.

16. On August 18, 2015, Ms. Dionne applied for a home loan with Core Financial in Bradenton, Florida ("**Core**").

17. Pursuant the application, Core requested a tri-merge credit report through Factual on August 18, 2015.

18. A tri-merge report merges credit bureau data from the CRAs Equifax, Experian, and Trans Union into one composite report.

19. Upon receiving Core's request for a tri-merge report, Factual's automated systems obtained individual reports from the three CRAs and utilized automated software to "merge" the reports into one composite credit report along with Ms. Dionne's FICO credit scores. **SEE PLAINTIFF'S EXHIBIT B.**

20. The tri-merge report's heading lists "Kroll Factual Data" as the company providing the information, along with a Colorado address. *Id*.

21.   On information and belief, "Kroll Factual Data" refers to the company formerly known as Kroll Factual Data, Inc.

22.   Kroll Factual Data, Inc. is currently a debtor in the commencement of a case under chapter 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware administered under case number 15-10226.

23.   Kroll Factual Data, Inc. sold the majority of its assets to CBC Companies, Inc. and its affiliates on January 20, 2015. **SEE PLAINTIFF'S EXHIBIT C.**

24.   On information and belief, this sale included the sale of Kroll Factual Data's credit reporting business to CBC Companies Inc.'s affiliate "FD Holdings LLC" also known as Factual.

25.   The tri-merge report, while prepared in a manner in which its readers would believe it was generated by Kroll Factual Data Inc., was in fact generated by *Factual* on August 18, 2015.

26.   Within the tri-merge report, the Shellpoint's tradeline on Factual's tri-merge report stated: "Chapter 7 bankruptcy; Chapter 7; Included in bankruptcy; Closed **04/15**." **SEE PLAINTIFF'S EXHIBIT B**. (emphasis added).

27.   Factual's tri-merge report stated that Shellpoint reported payments which were more than 30 but less than 60 days past due in February 2015, March 2014, September 2014, October 2014, November 2014, and December 2014. *Id.*

28.    Factual's tri-merge report stated that Shellpoint reported payments of more than 60 but less than 90 days past due in August 2014. *Id.*

29.   Factual's tri-merge report also stated that Shellpoint reported a payment more than 90 days past due in January 2015. *Id.*

30. At no point was Ms. Dionne delinquent on any payments towards the debt to Shellpoint in 2014 or 2015.

31. Ms. Dionne was not delinquent on any payments in 2014 and 2015 to Shellpoint because the debt was discharged through bankruptcy in 2012 and she was under no obligation to make payments after that date on the discharged debt.

32. As a result, she made no payments in 2014 or 2015 on the debt.

33. Equifax, Trans Union, and Experian are under obligation, pursuant the FCRA, to include all information in its files when creating consumer credit disclosure reports.

34. Ms. Dionne's Equifax consumer credit disclosure shows that Equifax received no new information or report concerning the debt since February 2012. **SEE PLAINTIFF'S EXHIBIT D.**

35. Ms. Dionne's Trans Union consumer credit disclosure shows that Shellpoint had updated the account as "Account Included in Bankruptcy" with a balance of $0. **SEE PLAINTIFF'S EXHIBIT E.**

36. There is no notation of any late payment being reported in 2014 or in 2015 on Ms. Dionne's Trans Union consumer disclosure report. *Id.*

37. Ms. Dionne's Experian consumer credit disclosure shows that while Shellpoint reported information in August 2015, it simply re-reported that the account had a $0 balance and was included in bankruptcy. **SEE PLAINTIFF'S EXHIBIT F.**

38. There is no notation of any late payment being reported in 2014 or in 2015 on Ms. Dionne's Experian consumer disclosure report. *Id.*

39. In sum, Shellpoint did not report to Equifax, Experian or Trans Union that Ms. Dionne was either 30, 60, or 90 plus days past-due in 2014 or 2015.

40. Due solely to Factual's reporting of a supposed "90 plus" day late mortgage payment in 2015, Core was unable to approve Ms. Dionne for a loan.

41. Ms. Dionne, initially believing that the false late payments may be the result of an error in Shellpoint's reporting, disputed the accuracy of Shellpoint's reporting to Experian as well as to Shellpoint directly.

42. Pursuant to the FCRA, Experian notified Shellpoint of Ms. Dionne's dispute and requested that Shellpoint make a reasonable reinvestigation into Ms. Dionne's dispute.

43. On or about September 5, 2015, Shellpoint sent a letter to Ms. Dionne, under her married name of McEwen, advising her that Shellpoint recognized that she was discharged of the debt though bankruptcy in 2012 and that the debt should not be reported against her to the CRAs. **SEE PLAINTIFF'S EXHIBIT A.**

44. Further, upon investigation of the dispute, Shellpoint has determined that it was accurately reporting the debt to the consumer reporting agencies. *Id.*

45. In sum, Shellpoint was not reporting the late payments in 2014 and 2015, as shown in Factual's tri-merge report, to the CRAs. *Id.*

46. As a result of Shellpoint not finding anything deficient in its reports to the CRAs, Shellpoint responded to Experian that its information was verified as accurate, with updates. **SEE PLAINTIFF'S EXHIBIT F.**

47. The update Shellpoint made was the same information it had previously reported, but it updated its last reported date to August 2015. *Id.*

48. When Ms. Dionne was told that because of Factual's false reporting of "late" mortgage payments in 2015, she was ineligible to obtain a home loan for which she otherwise qualified, she became depressed.

49. Ms. Dionne had contracted to purchase a house from an acquaintance and as a result of her loan denial, she felt embarrassed and anxious whenever she sees the acquaintance.

50. Due in part to her anxiety concerning the loan denial due to Factual's report containing false information, Ms. Dionne had to take prescribed anti-anxiety medication on a daily basis.

51. Since Ms. Dionne was unable to obtain a home loan due to Factual's report containing false information, she had to continue renting a house at a cost of $900 per month.

52. The monthly rent amount would otherwise have gone towards equity in her home.

53. Factual's report containing false information also has diminished the amount Ms. Dionne will receive in her 2015 tax return since interest paid on a home mortgage is tax-deductible and rent is not.

54. Upon information and belief, Factual is aware of the false information generated in reports, but continues to produce reports without remedying this issue.

55. Upon information and belief, Factual has no process in its automated merging to check for logical inconsistencies in its reports or to verify the integrity of the merged data prior to its dissemination to the end user of the report.

56. Ms. Dionne has hired this law firm to represent her in this matter and is obligated to pay its reasonable fees.

**COUNT I**
**VIOLATIONS OF THE FCRA-- 15 U.S.C. § 1681, *et. seq.***

57. Ms. Dionne adopts and incorporates paragraphs 1 - 56 as if fully stated herein.

58. Factual's conduct violated 15 U.S.C. § **1681e(b)** in that Factual failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the

individual about Ms. Dionne when it provided false data in the report it prepared for Core on **August 18, 2015**.

59. Factual's conduct demonstrated a reckless disregard for its duty as prescribed in 15 U.S.C. § 1681e(b) to produce reports using reasonable procedures to ensure maximum possible accuracy.

60. As a result of Factual's conduct:

   (a) Ms. Dionne continued to pay rent that would otherwise be assisting her in building equity in her own home;

   (b) Ms. Dionne spent a great deal of time in her efforts to remedy an error Factual falsely ascribed to the CRAs; and,

   (c) Ms. Dionne suffered extreme emotional distress, requiring treatment with medication, which she continues to suffer.

61. For its aforementioned violations, Factual is liable to Ms. Dionne pursuant to the FCRA for statutory damages of up to $1,000, and / or other relief, including without limitation, her financial and emotional injuries.

**WHEREFORE,** Ms. Dionne respectfully requests this Honorable Court enter judgment against Factual for:

   a. Damages in the total amount of **$20,000.00**, including, without limitation:

      i. Statutory damages of **$1,000.00** per incident, pursuant to 15 U.S.C. § 1681n(a)(1)(A); and/or

      ii. Actual damages pursuant to 15 U.S.C. § 1681n(a)(1)(A) for Ms. Dionne's **$900** per month rental lease extension, emotional distress requiring daily

        anti-anxiety medication, diminished quality of life, time spent correcting Factual's errors; and/or

iii.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2) for Defendant's production of tri-merge reports with knowledge the merged data may not be accurate; and/or

iv.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3) or 15 U.S.C. § 1681o(a)(2); and,

v.    Such other relief that this Court deems just and proper.

<strong><u>JURY TRIAL DEMANDED</u></strong>

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted this 4th day of November 2015, by:

        <u>/s/ Bobbi Madonna</u>
        Bobbi Madonna
        Florida Bar # 0056265
        BMadonna@SeraphLegal.com
        **SERAPH LEGAL, P.A.**
        2002 E. 5th Avenue, Suite 104
        Tampa, FL 33605
        (813) 567-1230
        Attorneys for Terria Dionne